UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JUN 2 0 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 468 |
| vs. | ) | Magistrate Judge Nan R. Nolan |
| | ) | |
| MONIQUE C. STEWARD | ) | |

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant MONIQUE C. STEWARD, and her attorney, SUSAN PAVLOW, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below.  The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.      The information in this case charges defendant with embezzling in excess of $900 in payroll compensation from the United States, in violation of Title 18, United States Code, Section 641.

3.      Defendant has read the charge against her contained in the information, and that charge has been fully explained to her by her attorney.

4.      Defendant fully understands the nature and elements of the crime with which she has been charged.

## **Charge to Which Defendant is Pleading Guilty**

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information. The information charges defendant with embezzling in excess of $900 in payroll compensation from the United States, in violation of Title 18, United States Code, Section 641.

## **Factual Basis**

6.     Defendant will plead guilty because she is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish her guilt and relevant conduct beyond a reasonable doubt:

Beginning as early as February 18, 2004 and continuing through on or about August 10, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, defendant STEWARD did embezzle, steal, purloin, and knowingly convert to her own use money of the United States, namely, in excess of $900 in payroll compensation from the Internal Revenue Service, to which she was not entitled.

Specifically, defendant STEWARD was hired as a secretary in the Chicago office of the Internal Revenue Service ("IRS") in July 2002. Steward worked as the group secretary of Group 7637, the Tax Exempt/Government Entities division in the IRS's Chicago office, and was supervised by the group manager. As a group secretary, STEWARD's duties included timekeeping, filing, typing, case closures, telephone calls, and filing reports.

2

STEWARD left her position as a group secretary with Group 7637 on August 31, 2007, transferring to the IRS's office in Atlanta, Georgia.

IRS employees, including STEWARD, submitted their time sheets on IRS Form 3081, which identifies each employee's time for a particular pay period, designating the type of hours each employee used by date as regular hours, annual leave, sick leave, administrative time, holiday time, etc. The group manager of Group 7637 required his employees to submit their time sheets to him by the second Wednesday of each pay period. Employees either e-mailed or provided a hard copy of their time sheets to the group manager or STEWARD. The group manager gathered all of the time sheets and compared them to the employees' requests to use benefit time. After checking to ensure that each employee's time sheet was correct, the group manager physically signed each employee's IRS Form 3081 and gave those forms to STEWARD so that she could enter the time into the IRS's web-based payroll Single Entry Time Reporting (WEBSETR) payroll software system. Once STEWARD had entered the time into the WEBSETR system, she notified the group manager that the payroll report was ready to be signed and authorized. The group manager then logged onto the WEBSETR system and approved the time. As STEWARD was well aware, the group manager typically approved the time that had been entered into the WEBSETR system by STEWARD without comparing STEWARD's entries to the forms that had been submitted by the employee and approved by the group manager.

Beginning as early as February 18, 2004 and continuing through on or about August 10, 2007, for the purpose of receiving compensation to which she was not entitled, STEWARD made various false entries into the WEBSETR system that reflected that she had worked certain hours when, in reality, STEWARD had taken benefit time or leave without pay (LWOP) for those hours. STEWARD submitted IRS Form 3081 time sheets to the group manager that accurately documented the time that she worked and the leave time that she used during this time period.  When STEWARD entered her time into the WEBSETR system, however, she documented that she had worked those hours that she had previously documented as being benefit time or LWOP.  For example, on or about February 19, 2004, STEWARD submitted an IRS Form 3081 time sheet stating that STEWARD took one hour of administrative leave on February 18, 2004 but later entered into the WEBSETR system that STEWARD worked eight hours on February 18, 2004, for a total loss of one hour. STEWARD knew that the group manager did not compare her entries into the WEBSETR system with her time sheets and that, as a result, those false entries would cause her to receive compensation to which she was not entitled.

In total, STEWARD was paid for 805 hours that she did not work for a total loss to the United States of $12,657.68 between in or about February 2004 and in or about August 2007.  Over the course of 2004, STEWARD entered 146 hours as regular work hours in the WEBSETR system when her IRS Form 3081 time sheets show that STEWARD took those hours as benefit time or LWOP for a total loss to the United States of $2,116.65.  In 2005,

4

STEWARD entered 156 hours as regular work hours in the WEBSETR system when her IRS Form 3081 time sheets show that she took those hours as LWOP, for a loss to the United States of $2,355.60. In 2006, STEWARD entered 247 hours as regular work hours in the WEBSETR system when her IRS Form 3081 time sheets show that she took those hours as LWOP or annual leave, for a loss to the United States of $3,947.23. In 2007, STEWARD entered 256 hours as regular work hours in the WEBSETR system when her IRS Form 3081 time sheets show that she took those hours as LWOP or annual leave, for a loss to the United States of $4,211.20. STEWARD converted these funds to her own use even though she knew she was not entitled to receive these funds.

## Maximum Statutory Penalties

7.    Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a.    A maximum sentence of not more than one year's imprisonment. This offense also carries a maximum fine of $100,000. Defendant further understands that the judge also may impose a term of supervised release of not more than one year.

b.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $25 on the charge to which she has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.     **Offense Level Calculations.**

i.     The base offense level for the charge in the information is six, pursuant to Guideline § 2B1.1(a)(2);

ii.     A four-level enhancement in the offense level is warranted because the offense of conviction and relevant conduct involved more than $10,000, pursuant to Guideline § 2B1.1(b)(1)(C).

iii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct.  If the government does not receive additional evidence in conflict with this provision, and if defendant continues to

accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including

by furnishing the United States Attorney's Office and the Probation Office with all requested

financial information relevant to her ability to satisfy any fine that may be imposed in this

case, a two-level reduction in the offense level is appropriate.

c.    **Criminal History Category.**  With regard to determining defendant's

criminal history points and criminal history category, based on the facts now known to the

government, defendant's criminal history points equal zero and defendant's criminal history

category is I.

d.    **Anticipated Advisory Sentencing Guidelines Range.**  Therefore,

based on the facts now known to the government, the anticipated offense level is 8, which,

when combined with the anticipated criminal history category of I, results in an anticipated

advisory Sentencing Guidelines range of 0 to 6 months' imprisonment, in addition to any

supervised release, fine, and restitution the Court may impose.

e.    Defendant and her attorney and the government acknowledge that the

above Guideline calculations are preliminary in nature and are non-binding predictions upon

which neither party is entitled to rely.  Defendant understands that further review of the facts

or applicable legal principles may lead the government to conclude that different or

additional Guideline provisions apply in this case.  Defendant understands that the Probation

Office will conduct its own investigation and that the Court ultimately determines the facts

and law relevant to sentencing, and that the Court's determinations govern the final Guideline

calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

    f.  Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

  10. The government agrees to recommend that sentence be imposed within the applicable guidelines range and to make no further recommendation concerning at what point within the range sentence should be imposed.

  11. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

8

12.     Regarding restitution, the parties acknowledge that  the total amount of restitution owed to the United States is $12,658, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

13.     Defendant agrees to pay the special assessment of $25 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Presentence Investigation Report/Post-Sentence Supervision

14.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against her, and related matters.  The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

15.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for

acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence

for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of

Title 18, United States Code, Section 1001 or as a contempt of the Court.

16.    For the purpose of monitoring defendant's compliance with her obligations

to pay a fine during any term of supervised release or probation to which defendant is

sentenced, defendant further consents to the disclosure by the IRS to the Probation Office

and the United States Attorney's Office of defendant's individual income tax returns

(together with extensions, correspondence, and other tax information) filed subsequent to

defendant's sentencing, to and including the final year of any period of supervised release

or probation to which defendant is sentenced. Defendant also agrees that a certified copy of

this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose

the returns and return information, as provided for in Title 26, United States Code, Section

6103(b).

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

17.    This Plea Agreement is entirely voluntary and represents the entire agreement

between the United States Attorney and defendant regarding defendant's criminal liability

in case 08 CR 468.

18.    This Plea Agreement concerns criminal liability only. Except as expressly set

forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the

United States or any of its agencies of any administrative or judicial civil claim, demand or

cause of action it may have against defendant or any other person or entity. The obligations

of this Agreement are limited to the United States Attorney's Office for the Northern District

of Illinois and cannot bind any other federal, state or local prosecuting, administrative or

regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

19.    Defendant understands that by pleading guilty she surrenders certain rights,

including the following:

a.    **Trial rights.**  Defendant has the right to persist in a plea of not guilty

to the charge against her, and if she does, she would have the right to a public and speedy

trial.

i.    The trial could be either a jury trial or a trial by the judge sitting

without a jury.  Defendant has a right to a jury trial.  However, in order that the trial be

conducted by the judge sitting without a jury, defendant, the government, and the judge all

must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve

citizens from the district, selected at random.  Defendant and her attorney would participate

in choosing the jury by requesting that the Court remove prospective jurors for cause where

actual bias or other disqualification is shown, or by removing prospective jurors without

cause by exercising peremptory challenges.

11

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

b.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs.  Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

## Other Terms

20.    Defendant agrees that she will not oppose any proceedings to remove her from the Internal Revenue Service and will not reapply for employment with the Internal Revenue Service.

21.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

22.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

23.    Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement.  Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that

13

in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

24.    Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

25.    Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

26.    Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney.  Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _June 20, 2008_

PATRICK J. FITZGERALD
United States Attorney

MONIQUE C. STEWARD
Defendant

MEGAN CUNNIFF CHURCH
Assistant U.S. Attorney

SUSAN PAVLOW
Attorney for Defendant

14